IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MARY MCKAIN, | CV 21–100–M–DWM |
| Plaintiff, | |
| vs. | OPINION & ORDER |
| SAFECO INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

From May 2020 to May 2021, Plaintiff Mary McKain was insured under a Homeowners Policy issued by Defendant Safeco Insurance Company of America ("Safeco"). In September 2020, a pipe in McKain's basement released water into her home for one month. McKain reported the claim to Safeco under her Homeowners Policy, and Safeco denied the claim on the basis that the Policy excluded damage from such a long-term leak. McKain now seeks a declaratory judgment that Safeco is obligated to pay for the damage that occurred during the first 13 days of the leak, alleges various contract-related claims, and seeks punitive damages on the basis that Safeco acted with actual malice when it denied her claim. Because the Policy unambiguously excludes coverage for McKain's claim,

1

Safeco's motion for summary judgment is granted, and McKain's cross-motion for partial summary judgment is denied.

## BACKGROUND[1]

Mary McKain purchased a Safeco Homeowners Insurance Policy, Policy Number OM27334738 ("the Policy"), with effective dates from May 1, 2020, to May 1, 2021. (Doc. 27 at ¶ 1.) The Policy covered McKain's part-time residence in Polson ("the Property"). (*Id.* ¶ 2.) The Policy contains the following exclusion for building property losses:

> **BUILDING PROPERTY LOSSES WE DO NOT COVER**
>
> We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area;
>
> . . .
> 5. continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months, or years.

(Doc. 23-1 at 17–18). This exclusion is referred to as "the long-term leak exclusion." The terms "seepage" and "leakage" are undefined by the Policy, but "seep" is generally defined as "to flow or pass slowly through fine pores or small openings," *Seep*, MERRIAM-WEBSTER DICTIONARY (Aug. 24, 2022),

---

[1] All facts are undisputed unless otherwise stated. (*See* Docs. 23, 27.)

https://www.merriam-webster.com/dictionary/seeping, while "leak" is generally defined as "to enter or escape through an opening, usually by a fault or mistake," *Leak*, MERRIAM-WEBSTER DICTIONARY (Aug. 24, 2022), https://www.merriam-webster.com/dictionary/leaking.

In mid-August 2020, McKain left the Property, (Doc. 23 at ¶ 6), and her cousin checked on the Property approximately once a week in McKain's absence, (Doc. 23-2 at 3–4). During these weekly check-ins, McKain's cousin checked only the upstairs of the Property. (*Id.* at 4.) McKain's October 2020 electric bill from Mission Valley Power reflected a significant increase in daily electric usage at the Property. (*Compare* Doc. 23-3 at 8 (electricity bill from August to September for $30.23) *with* Doc. 23-3 at 10 (electricity bill for September to October for $902.85).)

When McKain noticed this increase in her electricity bill, she asked her cousin to check on the Property. (Doc. 27 at ¶¶ 7–8; Doc. 23-2 at 3–4.) Her cousin discovered water in McKain's basement on October 19, 2020. (Doc. 27 at ¶ 8.) According to McKain, the leak stemmed from "a pressurized hot water pipe in the basement [that] became separated from the hot water tank[,] sending an open flow of heated water into the basement," and, "[a]lthough the exact day the leak started is not certain, power usage records indicate the leakage began on or about September 19, 2020." (*Id.* ¶¶ 5, 6.) Notably, McKain refers to the event that led to

the water in her basement as both "an open flow" and a "leak," despite those words having distinct meanings. Nonetheless, McKain consistently refers to the event as a "leak." (*See, e.g., id.* ¶¶ 6, 8.)

Marc Drury, a building contractor with building inspection and restoration certification, inspected the damage to McKain's home and prepared an expert report on her behalf in May 2022. (Doc. 23-4 at 4–7.) Drury did not personally visit the site, but reviewed photographs, records, and bills to reach his conclusions. (*Id.* at 4.) Drury determined that "the water line that failed originated from a hot water source, [and] the damage presented was consistent with high humidity and vapor diffusion, as the steam appeared to migrate to all areas of the basement." (*Id.* at 5.) Drury concluded that "[i]n [his] professional opinion, all damages are consistent with a high temperature, high humidity water loss and could have presented within the first 13 days of the loss." (*Id.* at 6.)

McKain reported the leak to Safeco on October 19, 2020, and made a claim for damages. (Doc. 27 at ¶ 9.) Safeco denied the claim the next day. (*Id.* ¶ 10.) The denial letter states that "the leak had been going on in [the] basement for one month." (Doc. 23-1 at 54.) The letter also states that "the grounds for [Safeco's] denial of coverage under the Policy, or under applicable law, with respect to the claim, include, but are not limited to" the long-term leak exclusion. (*Id.* at 56.) In

4

short, Safeco concluded that the damage was caused by the long-term leak, which removed the damage from coverage under the Policy. (*Id.*)

McKain filed suit in state court in August 2021, seeking a declaratory judgment that Safeco is obligated to pay damages in the amount of $48,719 for losses sustained during the first 13 days the leak was occurring. (Doc. 1-1 at 5.) McKain also sought relief under the Uniform Declaratory Judgment Act, damages related to Safeco's alleged breach of the Policy, and attorney fees. (*Id.*) Safeco removed the action to this Court in September 2021. (Doc. 1.) Subsequently, Safeco was ordered to show cause why the matter should not be remanded to state court for failure to satisfy the amount in controversy requirement for diversity jurisdiction. (Doc. 5.) Based on Safeco's response, (*see* Doc. 6), the Court determined that "Safeco demonstrated by a preponderance of the evidence that the amount in controversy at issue in this case, including the attorney fees potentially recoverable under the insurance exception to the American Rule, exceeds the jurisdictional threshold," (Doc. 9).

McKain subsequently amended her complaint, seeking a declaratory judgment that Safeco is obligated to pay for all losses incurred during the first 13 days of the leak (Count I); and alleging that Safeco breached the Policy (Count II), breached the implied covenant of good faith and fair dealing (Count III), and violated the Unfair Trade Practices Act (Count IV); and seeking punitive damages

(Count V). (Doc. 17.) Safeco moved for summary judgment on all counts, (Doc. 21), and McKain filed a cross-motion for partial summary judgment, (Doc. 24), arguing that "McKain is entitled to partial summary judgment on the issue of coverage," (Doc. 25 at 3). Because the language of the Policy is unambiguous and excludes coverage for McKain's damages, Safeco's motion for summary judgment is granted and McKain's motion for partial summary judgment is denied.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, it is the court's "independent duty to review each cross-motion and its supporting evidence . . . to determine whether the evidence demonstrates a genuine issue of material fact." *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1137 (9th Cir. 2001). Each motion is therefore evaluated separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016) (quotation marks omitted). Because this Court is sitting in diversity, Montana's substantive law on contract interpretation applies. *See Ticknor v. Choice Hotels Int'l Inc.*, 265 F.3d 931, 937 (9th Cir. 2001). "In Montana, the interpretation of an

insurance contract is a question of law." *Barnard Pipeline, Inc. v. Travelers Prop. Cas. Co. of Am.*, 3 F. Supp. 3d 865, 870 (D. Mont. 2014).

## ANALYSIS

The central issue in this case is whether the plain language of the long-term leak exclusion is unambiguous. Ultimately, when the Policy is read as a whole, the long-term leak exclusion is not ambiguous, and it excludes from coverage loss such as that which occurred here. Therefore, no coverage exists for McKain, also dooming her claims that are contingent on a finding of coverage.

### I. Policy Coverage

Under Montana law, "[t]he determination of whether insurance coverage exists is a two-step process." *U.S. Fire Ins. Co. v. Greater Missoula Family YMCA*, 454 F. Supp. 3d 978, 981 (D. Mont. 2020). The insured first must prove that the alleged loss is covered by the policy, then the burden shifts to the insurer to prove that a policy exclusion removes the alleged loss from coverage. *Id.* To determine whether coverage exists, courts look to the plain language of the policy, and "[t]he language of an insurance policy governs if it is clear and explicit." *N. Pac. Ins. Co. v. Stucky*, 986 F. Supp. 2d. 1207, 1209 (D. Mont. 2013). If the language of the policy is not clear and explicit, then it is ambiguous; put differently, "[a]n ambiguity exists when an insurance contract taken as a whole is reasonably subject to two different interpretations." *Id.* Ambiguity is construed in

7

favor of the insured and against the insurer. *Id.* "Exclusions from coverage are narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy." *Id.* (quotation marks omitted).

### A. Policy Language

The long-term leak exclusion removes from coverage damage that is the result of "continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor which occurs over a period of weeks, months, or years." (Doc. 23-1 at 18.) According to McKain, the word "over" creates confusion and renders the exclusion ambiguous. Under the interpretation McKain promotes, the plain language excluding loss from a long-term leak *over* a period of weeks, months, or years necessarily means that loss from a long-term leak *under* a period of weeks, months, or years is covered by the Policy. (Doc. 25 at 10.) Under that reading, the long-term leak exclusion is ambiguous because there are three possible results:

1. When water causes loss during the first 13 days, and continues to cause loss thereafter, the entire loss is covered[];

2. When water causes loss during the first 13 days, and continues to cause loss thereafter, then all losses which occurred during the first 13 days are covered, and any loss the insurer can prove occurred after day 13 is excluded[]; and

3. When water does not cause loss during the first 13 days, but causes loss thereafter, then that loss the insurer proves occurred after day 13 is excluded.

8

(*Id.* at 10–11.) McKain concludes that "[n]o matter how [the exclusion] is interpreted, all losses caused by water exposure in less than 14 days (two weeks) are covered losses." (*Id.* at 11.)

Safeco disagrees. According to Safeco, the long-term leak exclusion unambiguously "applies to all losses caused by water leakage or seepage occurring over a period of weeks or more, even where another cause or event contributed to the overall damage." (Doc. 22 at 9.) Under the reading Safeco promotes, "[t]he temporal aspect of the exclusion—over a period of weeks, months, or years—clearly refers to the leakage of water, not the resulting loss." (Doc. 30 at 5.) Safeco has the better position.

**B. Ambiguity**

Despite McKain's arguments otherwise, the Policy's long-term leak exclusion is unambiguous. The plain language of the introduction to the building property loss exclusions precludes the first of McKain's proffered interpretations. In no event would the entire loss be covered if "water causes loss during the first 13 days and continues to cause loss thereafter." (*See* Doc. 25 at 10.) The introductory language states that loss resulting from a long-term leak (which McKain implicitly concedes is a leak occurring for 14 days or more) "is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." (Doc. 23-1 at 17.) Thus, even if the Policy supported McKain's

9

reading that loss occurring within the first 13 days of a leak was covered under the Policy, any loss occurring thereafter is unambiguously excluded from coverage.

Next, McKain's second and third proffered readings of the Policy are foreclosed when the introductory language is read in conjunction with the long-term leak exclusion. *See N. Pac. Ins. Co.*, 986 F. Supp. 2d at 1209. The introductory language to the Policy exclusions states, "We do not cover loss caused directly or indirectly by any of the following excluded perils," clarifying that each of the exclusions that follows identifies a "peril," not a "loss." (Doc. 23-1 at 17.) Thus, consistent with Safeco's argument, the long-term leak exclusion identifies a peril—the continuous or repeated seepage or leakage of water or steam which occurs over a period of weeks, months, or years—that excludes any resultant loss from coverage.

McKain's position that the Policy provides coverage for loss caused by water during the first 13 days of a leak, even if that leak continues beyond 13 days, ignores that the temporal limitation imposed in the long-term leak exclusion applies to the peril—the continuous or repeated seepage or leakage of water—and not the loss. Here, McKain acknowledges that the event[2] "began on or about

---

[2] As noted above, McKain refers to this event as both "an open flow" and a "leak." Though the two are not necessarily synonymous, her more consistent use of the term "leak" to describe the event indicates her agreement that the event was, in fact, a leak. Accordingly, though the imprecision with which McKain describes

10

September 19, 2020." (Doc. 27 at ¶ 6.) She agrees that the leak was discovered on October 19, 2020, (*id.* ¶ 8), and so the leakage of the water continued for roughly 30 days, or about four weeks. The duration of this leak meets the definition for the excluded peril identified in the long-term leak exclusion. Thus, it is irrelevant whether McKain sustained damages within any 13-day window because the long-term leak exclusion excludes peril such as that which occurred here, and once that peril has occurred, the loss that flows from it "directly or indirectly" is excluded. (Doc. 23-1 at 17.)

That conclusion is bolstered by *Karon v. Safeco Insurance Co.*, wherein the district court concluded that the same exclusion at issue in this case was unambiguous and barred coverage for any losses that occurred in the first 13 days of a leak. *See* 2021 WL 3419037, at *5 (D. Ariz. Aug. 5, 2021). The plaintiffs in *Karon* were insured under a Safeco policy that includes an identical long-term leak exclusion, and they incurred losses after a refrigerator water line broke in their Arizona vacation home, leaking water into the home undetected for an extended period; Safeco denied the claim based on the long-term leak exclusion. *Id.* at *1. The plaintiffs requested Safeco reconsider its decision, arguing that "the Loss was not subject to Policy exclusions because [the p]laintiffs were only seeking

---

the event could create some factual issue, the Court views the event as a leak since that is primarily how McKain characterizes it.

coverage for damages that occurred in the first 13 days." *Id.* The plaintiffs argued that the exclusion applied only to losses sustained "over a period of weeks," meaning that any losses sustained within the first 13 days were covered under the policy. *Id.* at *3. The court rejected that argument on the basis that the exclusion was not ambiguous, and according to its plain and ordinary meaning, "[t]he operative term [] is 'over,' whereby Section 5 excludes claims for damage occurring '*over* a period of weeks,' not damage occurring '*after* a period of weeks.'" *Id.* In reaching its conclusion, the court in *Karon* distinguished its conclusion from the results in two cases McKain relies on for her ambiguity argument: *Wheeler v. Allstate Insurance Co.*, 687 F. App'x 757 (10th Cir. 2017), and *Hicks v. American Integrity Insurance*, 241 So.3d 925 (Fla. App. 2018) (per curiam).[3]

In *Wheeler*, the plaintiff sustained significant water damage to his vacation home as a result of a pipe leak in the basement, and the district court granted summary judgment for the insurer on the issue of coverage. 687 F. App'x at 759. On appeal, the court determined that a long-term leak exclusion that excluded damage "caused by seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years," was unambiguous, but that the

---

[3] There is no Montana case law addressing the policy language at issue. As such, all the case law on which the parties rely is merely persuasive.

exclusion was silent as to whether coverage existed for damage that was caused within a period of "weeks." *Id.* at 766 (alterations omitted). The court concluded that the exclusion "does not clearly and unmistakably apply to damage caused by less than 14 days of leakage." *Id.* Thus, the court remanded for the district court to determine the factual issue of whether the plaintiff could prove damages that occurred within the first 13 days of the leak. *Id.* at 772.

Similarly, in *Hicks*, the plaintiff sustained damage to his home while he was away as a result of leak in a refrigerator line. 241 So. 3d at 926. The insurer denied the plaintiff's claim on the basis that the policy "do[es] not insure for loss caused by constant or repeated seepage or leakage of water over a period of 14 or more days," and the district court agreed. *Id.* at 926–27 (alterations omitted). On appeal, the court determined that the language of the policy is ambiguous, concluding that "[i]t is not unambiguously clear that a provision excluding losses caused by constant leakage of water over a period of fourteen or more days likewise excludes losses caused by constant leakage of water over a period of less than fourteen days." *Id.* at 927. Finding this ambiguity, the court determined that the provision had to be read in favor of coverage, and the case was remanded to the district court to enter summary judgment in favor of the plaintiff on the issue of coverage within the first 13 days of the leak. *Id.* at 928.

Distinguishing both *Wheeler* and *Hicks*, the court in *Karon* determined that Plaintiffs' loss within 13 days was not covered by the policy because "the lead-in clause in [the policy] in *Wheeler* is meaningfully different than the lead-in clause here." 2021 WL 3419037, at *4. In particular, the court emphasized that the lead-in clause in *Wheeler* excluded loss to property "consisting or caused by" while the lead-in clause to the Safeco policy in *Karon* excluded loss "caused directly or indirectly by any of the [] excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." *Id.* The court ultimately concluded that "the clause here excludes otherwise covered risks, like water damage occurring within the first 13 days, that contribute to the overall loss." *Id.* The court in *Karon* rejected the reasoning in *Hicks* as both non-binding and unpersuasive, pointing instead to a case from the Western District of Texas that interpreted the same language as the language at issue in *Hicks* and determined that language was unambiguous. *Id.* (citing *Gen. Star Indem. Co. v. Sherry Brooke Revocable Tr.*, 243 F. Supp. 2d 605, 608 (W.D. Tex. 2001)).

Ultimately, *Karon* is most persuasive and supports a determination that the Policy is unambiguous. Read in its entirety, the exclusions to building property loss section exclude loss that results from a leak that occurs over a period of weeks, months, or years. The leak on the Property occurred over a period of

14

weeks, and so the loss resulting from it is excluded. Accordingly, Safeco's motion for summary judgment is granted.

## II. Remaining Claims

Because the long-term leak exclusion unambiguously excludes coverage, the rest of McKain's claims necessarily fail. *See Parker v. Safeco Ins. Co. of Am.*, 376 P.3d 114, 121 (Mont. 2016) (claims under the Unfair Trade Practices Act fail in light of a finding of no coverage); *cf. Oltz v. Safeco Ins. Co. of Am.*, 306 F. Supp. 3d 1243, 1259 (D. Mont. 2018) (granting summary judgment for insurer on insured's breach of contract and breach of implied covenant of good faith and fair dealing claims in light of a finding of no coverage). Because Safeco did not breach the Policy, McKain also cannot seek punitive damages.

### CONCLUSION

Based on the foregoing,

IT IS ORDERED that Safeco's motion for summary judgment, (Doc. 21), is GRANTED and McKain's motion for partial summary judgment, (Doc. 24), is DENIED. The Clerk is directed to enter judgment consistent with this Order and close the case.

DATED this 25 day of August, 2022.

Donald W. Molloy, District Judge
United States District Court